**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Clarence R. Hill, Jr. and | ) | |
| Emily Hill, | ) | Case No.: 05-12590-BGC-7 |
| | ) | |
| Debtors. | ) | |
| | | |
| Terry Lynn Merchant, | ) | |
| Brenda Merchant, | ) | |
| Kevin Cosby, and | ) | |
| Vickie Cosby, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | A. P. No.: 12-00043 |
| | ) | |
| Clarence R. Hill, Jr. and | ) | |
| Emily P. Hill, | ) | |
| | ) | |
| Defendants. | ) | |

**Memorandum Opinion**

**I. Background**

    The matter before the Court is the <u>Complaint</u> filed on March 12, 2012, by Terry Lynn Merchant, Brenda Merchant, Kevin Cosby, and Vickie Cosby.[1]

    After notice, a trial was held on October 25, 2012. Appearing were Clarence Hill, one of the defendant-debtors; his attorney, Henry Lagman; Terry Lynn Merchant, one of the plaintiffs; and his attorney, Roderick Graham.[2]

---

    [1] "Merchant" is spelled "Merchants" in the complaint. Many other references in the record do not include the ending "s", including the Court's understanding of Terry Lynn Merchant's pronunciation of his name at the trial. The Court has chosen to use "Merchant." If this is incorrect, the Court apologizes.

    [2] The plaintiffs filed a <u>Motion for Judicial Notice of Documents</u> on October 24, 2012, one day before trial. That motion is also pending before the Court.

The matter was submitted on testimony; exhibits; the records in the debtors' Chapter 7 case and this adversary proceeding; and arguments and briefs of counsel.

## II. Summary of Decision

Based on the evidence, the Court finds:

1.    The debts owed to the plaintiffs Mr. Terry Merchant and Mr. Kevin Cosby by the defendant Clarence Richard Hill are not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A);

2.    The plaintiffs Mr. Terry Merchant and Mr. Kevin Cosby are entitled to nondischargeable judgments for specific amounts, including, where applicable, pecuniary, mental anguish, and punitive damages;

3.    In contrast, the plaintiffs Mr. Terry Merchant and Mr. Kevin Cosby did not prove that the defendant Emily P. Hill owes them a debt of any sort, particularly one that is nondischargeable; and,

4.    The plaintiffs Brenda Merchant and Vickie Cosby did not prove that they are entitled to any relief from either defendant.

## III. Relevant Findings of Fact

Mr. Hill owned a travel agency through which he booked cruises and trips.  In regard to cruises, his procedure was that a customer would ask to book a cruise then pay a small deposit, which Mr. Hill would send to the cruise company to hold a spot on a particular cruise. In this case, the cruise company was Carnival.

Sixty days prior to departure, the customer would be required to pay the balance owed on the cruise to Mr. Hill who would then forward those fund to the cruise company. If the balance was not paid by the customer to Mr. Hill or remitted by Mr. Hill to Carnival by the 60-day deadline, the customer's order would be cancelled and he or she would forfeit the spot on the cruise.

According to Mr. Merchant's testimony and Mr. Hill's own admission, in February 2005, Mr. Merchant purchased a Carnival cruise from Mr. Hill for his wife and him for about $3,600. The scheduled departure was May 18, 2005. Mr. Merchant paid Mr. Hill the required deposit of $300 ($150 for each person) when he booked the trip and also paid the balance prior to the 60-day deadline. That deadline was about  March 18, 2005.

Mr. Hill did not remit the balance he received from Mr. Merchant to Carnival; consequently, the Merchants' place on the cruise was cancelled.  Mr. Hill did not inform Mr. Merchant that the payment-balance had not been remitted to Carnival or that his

2

place on the cruise had been cancelled until Mr. Merchant, who, having not received his tickets and other material, confronted Mr. Hill in person several days before the scheduled departure of the cruise.

The evidence shows that rather than paying Mr. Merchant's balance to Carnival as he should have, Mr. Hill used the money for who-knows-what, that is either for personal purposes or in the conduct of his business, which he admits was, at the time, floundering.

Not only did Mr. Hill not tell Mr. Merchant at the time the balance was not paid, in fact, Mr. Hill had a conversation with Mr. Merchant in March about a minor change Mr. Merchant requested to his trip itinerary. But even then, Mr Hill did not inform Mr. Merchant that the balance for his reservation had not been, and would not be, paid to Carnival as required.

After learning from Mr. Hill that his wife's and his cruise reservation had been cancelled, Mr. Merchant scrambled and booked a non-cruise trip for the same week for about $2,400, a substantial amount for Mr. Merchant, especially considering he had already paid Mr. Hill about $3,600.

Mr. Merchant testified that he was mad and distressed about Mr. Hill's defalcation, and disappointed that he and his wife would, because of that defalcation, be unable to go on the cruise they originally planned, paid for, and anticipated.

It turns out that Mr. Hill had, in the same manner, mistreated many other customers, including the other plaintiff Mr. Cosby. In regard to those other individuals, Mr. Hill took either their deposits or the balances due on these other customers' trips and used them for his own purposes rather than submitting them to other travel providers to whom they were supposed to be remitted.

Mr. Hill's actions spawned several criminal actions against him. Specifically, in regard to Mr. Merchant and Mr. Cosby, Mr. Hill was indicted by the Jefferson County grand jury on March 31, 2006, for "knowingly obtain[ing] or exert[ing] unauthorized control over, by deception ... $3,246.00 ... the property of Terry Merchant with the intent to deprive the owner of said property, in violation of section 13A-8-3 of the Alabama Criminal Code," and " "knowingly obtain[ing] or exert[ing] unauthorized control over, by deception... $3,246.00... the property of Kevin Cosby with the intent to deprive the owner of said property, in violation of section 13A-8-3 of the Alabama Criminal Code...." Plaintiffs' Exhibit 6 (parentheticals added).

Seventeen other victims were listed in that indictment. The wording relating to the crimes committed against them by Mr. Hill is essentially the same as that in regard to Mr. Merchant and Mr. Cosby, that is, Mr. Hill knowingly obtained or exerted unauthorized control over, by deception, a specified amount of money from each of the named individuals with the intent to deprive the owner of that money.

Case 12-00043-TOM    Doc 27    Filed 09/16/13    Entered 09/16/13 14:11:25    Desc Main
Document    Page 3 of 23

Each charge against Mr. Hill was for theft by deception, although the statute violated varied depending on the amount of money taken. Some of the counts, like those involving Mr. Merchant and Mr. Cosby, fell under Code of Ala., 1975, § 13A-8-3, which makes it a felony to steal $2,500 or more. As to victims from whom Mr. Hill stole less than $2,500 but more than $500, he was charged under Code of Ala., 1975, § 13A-8-4, likewise a felony. And in counts charging him with stealing less than $500 from particular individuals, he was charged with violating Code of Ala., 1975, § 13A-8-5, which is a class A misdemeanor.

The group of cases listed in this indictment was assigned Case No. CC06-1544. Mr. Hill ultimately pled guilty on August 7, 2007. He received a split sentence of 10 years with 2 to serve, although the latter was suspended. He was placed on probation and ordered to pay restitution to the victims in that case.

It is apparent from the case action summary in the criminal case that Mr. Hill was also the subject of several other criminal cases, to-wit: CC06-1545, CC06-1546, CC06-1547, CC06-1548, CC06-1549 and CC06-1550. The sentence imposed on him in CC06-1544 was ordered to run concurrently with the sentences imposed on him in those other cases. Those cases involved many other victims whose money he had, by his own admission at trial, spent on himself or his business after promising them that he would use the same to pay for trips and cruises that they had paid him to arrange. Plaintiffs' Exhibit 8.

In total, Mr. Hill was ordered to pay $127,000 in restitution to 82 victims. Defendant's Exhibit 2. He was ordered to pay Mr. Merchant and Mr. Cosby restitution of the amounts listed in the indictment, that is, $3,246 each. That order directed him to pay the money into court, and for the court to send the money to the victims as the court received it. Mr. Hill testified that as of the date of the trial, he had paid $20,715 of the restitution to the state court.

### IV.  Conclusions of Law

### A.  Liability and Nondischargeability

### 1.  Mr. Hill's Liability and Nondischargeability

Mr. Hill's obligation to make restitution as part of his criminal sentence is, of course, nondischargeable. Colton v. Verola (In re Verola), 446 F.3d 1206, 1208 (11th Cir. 2006). Mr. Merchant and Mr. Cosby, however, seek civil judgments against him for not only the amounts he stole from them, but also for mental anguish damages and punitive damages.

4

### a. Fraud under Bankruptcy Law

Mr. Merchant and Mr. Cosby contend that the debts owed to them by Mr. Hill are nondischargeable pursuant to section 523(a)(2)(A) of the Bankruptcy Code. That section makes nondischargeable debts for, "money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition ...." 11 U.S.C. § 523(a)(2)(A).

Before a debt may be declared nondischargeable pursuant to 523(a)(2)(A), a creditor must prove, "the debtor made a false statement with the purpose and intention of deceiving the creditor; the creditor relied on such false statement; the creditor's reliance on the false statement was justifiably founded; and the creditor sustained damage as a result of the false statement." Fuller v. Johannessen (In re Johannessen), 76 F.3d 347, 350 (11th Cir. 1996).

### b. Theft of Property under Alabama Law

The crime for which Mr. Hill was indicted, and which he pled guilty to, was based on the same conduct complained of by Mr. Merchant and Mr. Cosby in this case. Under Alabama law, it is also one that is statutorily established in Code of Ala., 1975, § 13A-8-3, entitled "Theft of property in the first degree." That section provides, "The theft of property which exceeds two thousand five hundred dollars ($2,500) in value, or property of any value taken from the person of another, constitutes theft of property in the first degree." Code of Ala., 1975, § 13A-8-3(a). Theft of property in the first degree is a felony. Code of Ala., 1975, § 13A-8-3(d).

Actions that constitute "theft of property" are established in Code of Ala., 1975, § 13A-8-2, which provides, in relevant part, that, "A person commits the crime of theft of property if he or she... [k]nowingly obtains by deception control over the property of another, with intent to deprive the owner of his or her property." Code of Ala., 1975, § 13A-8-2(2).

The indictment of Mr. Hill tracks the above language in regard to his theft of property from Mr. Merchant and Mr. Cosby, as well as the other 17 victims listed in that document. Section 13A-8-1(1)(f) explains, "Deception occurs when a person knowingly [among other things]... [p]romises performance which the defendant does not intend to perform or knows will not be performed. Code of Ala., 1975, § 13A-8-1(1)(f) (parentheticals added).

### c. Fraud under Alabama Law

Under Alabama law, the elements of a cause of action for intentional fraud, which may entitle the party deceived to receive punitive damages in addition to compensatory damages (see Code of Ala., 1975, § 6-11-20(a)), are listed in Code of Ala. 1975, §§ 6-5-103 and 6-5-104.

5

Section 6-5-103 provides:

> Willful misrepresentation of a material fact made to induce another to act, and upon which he does act to his injury, will give a right of action. Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action. In all cases of deceit, knowledge of a falsehood constitutes an essential element. A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood.

Code of Ala. 1975, § 6-5-103.

Section 6-5-104 provides:

> (a) One who willfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damage which he thereby suffers.

> (b) A deceit within the meaning of this section is either:
> (1) The suggestion as a fact of that which is not true by one who does not believe it to be true;

> (2) The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;

> (3) The suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact; or

> (4) A promise made without any intention of performing it.

Code of Ala. 1975, § 6-5-104.

Sections 6-5-103 and 6-5-104 cumulatively define the <u>mens rea</u> and delineate the conduct necessary to a cause of action for willful or intentional deception. To satisfy the <u>mens rea</u> requirement of the two statutes, a defendant must have intended to induce the plaintiff to act or alter his position. The conduct made actionable by the statutes includes: (1) intentional misrepresentations (a false statement made by someone who knows the statement to be false); (2) reckless misrepresentations (a false statement made recklessly by someone who may not know the statement to be

6

false or someone who has no reasonable grounds for believing it to be true); (3) fraudulent concealment (non-disclosure by someone who has a duty to disclose); and (4) promissory fraud (a promise made by someone who has no intention of performing the promise).

In addition to proving a defendant's fraudulent intent, to obtain a judgment based on intentional fraud, a plaintiff must also prove that the defendant made a false representation; that the false representation concerned a material existing fact; that the plaintiff relied upon the false representation; and that the plaintiff was damaged as a proximate result of his or her reliance upon the false representation. Alabama Psychiatric Services, P.C. v. 412 South Court Street, LLC, 81 So.3d 1239, 1247 (Ala. 2011). Where the fraud is based on a promise to do or abstain from doing something in the future, the plaintiff must prove not only that the false promise was made with a present intent to deceive, but also that, at the time the false promise was made, the defendant intended not to perform. Id.

For a misrepresentation to be actionable, it must be one of a material fact. Lawson v. Cagle, 504 So. 2d 226, 227 (Ala. 1987). A fact is considered "material" if it is one that is likely to induce the party to whom the representation is made to take action. Havens v. Trawick, 564 So. 2d 917, 920 (Ala. 1990). But the misrepresentation need not have been the sole motivation for the plaintiff's entering into a contract. It is sufficient if the misrepresentation materially contributed to the plaintiff's making the contract and was of such a character that the plaintiff would not have consummated the contract, had he or she known the falsity of the statement. Bank of Red Bay v. King, 482 So. 2d 274, 282 (Ala. 1985).

The plaintiff must show that his reliance upon the misrepresentation was reasonable under the circumstances. Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala. 1997). Where a party has reason to doubt the truth of a representation or is informed of the truth before he acts, he has no right to act thereon. M.J.M., Inc. v. Casualty Indem. Exch., 481 So. 2d 1136, 1141 (Ala. 1985). "If the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, 'voluni non fit injuria '." Torres v. State Farm Fire & Cas. Co., 438 So.2d 757, 759 (Ala. 1983)(quoting Munroe v. Pritchett, 16 Ala. 785, 789 (1849).[3] If the circumstances surrounding the pronouncement of the representation would have aroused suspicion as to its validity in the mind of a reasonable person, the plaintiff cannot be said to have reasonably relied upon the misrepresentation. Holman v. Joe Steele Realty, Inc., 485 So.2d 1142, 1144 (Ala. 1986); Cook v. Brown, 393 So. 2d 1016, 1019 (Ala. Civ. App. 1981).

_____

[3] Torres was overruled in Hickox v. Stover, 551 So.2d 259 (Ala. 1989), but was reinstated in Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala. 1997).

### d.  Comparison of Theft of Property and Fraud under Alabama Law with Fraud under Bankruptcy Law

### (1) Common Elements

The elements to support a conviction under Alabama law for theft of property are the same as the elements which support a determination of nondischargeability under section 523(a)(2)(A) the Bankruptcy Code and, with one exception, they are the same as those required to recover for intentional fraud in state court.

The elements are:

1.  The defendant practiced a deception on the plaintiff.  Code of Ala., 1975, § 13A-8-2(2)(criminal theft by deception); Fuller, 76 F.3d at 350 (523(a)(2)(A)); and Alabama Psychiatric Services, 81 So.3d at 1247 (Alabama civil fraud);

2.  The plaintiff suffered damages as a result of the defendant's deception. Code of Ala., 1975, § 13A-8-2(2)(criminal theft by deception); Fuller, 76 F.3d at 350 (523(a)(2)(A)); Cook's Pest Control, Inc. v. Rebar, 28 So.3d 716, 725 (Ala. 2009)(Alabama civil fraud);

3.  The deception was intentional.  Benefield v. State, 469 So.2d 699, 701 (Ala. Crim. App. 1985)(criminal theft by deception); Fuller, 76 F.3d at 350 (523(a)(2)(A)); Alabama Psychiatric Services, 81 So.3d at 1247 (Alabama civil fraud); and

4.  The plaintiff relied on the fraudulent misrepresentation or promise.  Ex parte Day, 481 So.2d 1169, 1171 (Ala. 1985)(criminal theft by deception); City Bank & Trust Co. v. Vann (In re Vann), 67 F.3d 277, 280 (11th Cir. 1995)(523(a)(2)(A)); AstraZeneca LP v. State, 41 So.3d 15, 28 (Ala. 2009)(Alabama civil fraud).

All of these elements may be based on a promise made by the defendant that he or she did not intend to keep.  Code of Ala., 1975, § 13A-8-1(1)(f)(criminal theft by deception); Benefield v. State, 469 So.2d at 701(same); Palmacci v. Umpierrez, 121 F.3d 781, 787 (1st Cir. 1997)(523(a)(2)(A)); Anastas v. American Savings Bank (In re Anastas), 94 F.3d 1280, 1285 (9th Cir. 1996)(same); Allison v. Roberts (In re Allison), 960 F.2d 481, 484 (5th Cir. 1992)(same); Bank of Louisiana v. Bercier (In re Bercier), 934 F.2d 689, 692 (5th Cir. 1991)(same); Daniels v. Clark (In re Clark), 2002 WL 1821600, *4 (10th Cir. BAP, Aug. 9, 2002); Besco Steel Supply, Inc. v. Farris (In re Farris), 2007 WL 4533503, *3 (Bankr. N.D. Ala., Dec. 19, 2007); Alabama Psychiatric Services, P.C. v. 412 South Court Street, LLC, 81 So.3d at 1247 (Alabama civil fraud).

8

## (2) One Exception

The one exception is this - under the criminal theft statute and section 523(a)(2)(A) the plaintiff's or victim's reliance must have been "justifiable," Field v. Mans, 516 U.S. 59, 74-75 (1995)(523(a)(2)(A); Fuller, 76 F.3d at 350 (same); Vann, 67 F.3d at 283 (same); Yeager v. State, 500 So.2d 1260, 1273 (Ala. Crim. App. 1986)(criminal theft by deception).[4]   In contrast, under a civil cause of action for intentional fraud under Alabama law, as explained above, the plaintiff's or victim's reliance must have been "reasonable."  Sandoz, Inc. v. State, 100 So.3d 514, 527 (Ala. 2012); AstraZeneca LP v. State, 41 So.3d 15, 28.[5]

### e.  Application of the Law of Theft of Property and Fraud to Mr. Hill's Actions

Mr. Hill's guilty plea in the criminal action constitutes an admission by him in this proceeding to having intentionally defrauded Mr. Merchant and Mr. Cosby of money they gave him to satisfy the balance owed to Carnival for their cruise reservations. Specifically, by entering that plea, Mr. Hill admitted that he intentionally deceived them into giving him that money by promising that he would forward it to Carnival to pay for their trips, even though he did not intend to honor that promise when he made it.  In addition, at the trial of this matter, Mr. Hill did not deny that both gentlemen paid him the balances due for their trips, and he admitted that he spent that money rather than sending it to Carnival.

---

[4]In regard to the "justifiable" reliance standard:

> A plaintiff, given the particular facts of his knowledge, understanding, and present ability to fully comprehend the nature of the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is 'one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth.

Hickox v. Stover, 551 So.2d 259, 263 (Ala. 1989), overruled, Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala. 1997).

[5]Under Alabama law a criminal conviction does not preclude relitigation in a civil case of the same issues that were involved in the criminal case.  "The conviction of the criminal charge is held in this state not to be conclusive of the fact of which [the defendant] was convicted when such fact is an issue in a civil case, in which the state or government securing the conviction is not a party. Fidelity-Phenix Fire Ins. Co. of New York v. Murphy, 226 Ala. 226, 146 So. 387, 392 (1933).  However, "a person's conviction in a criminal case is admissible against him in a civil action to show that he did the act for which he was convicted."  Durham v. Farabee, 481 So.2d 885, 886 (Ala. 1985).  A fortiori, "if the defendant interposed a plea of guilty, on which his conviction was predicated, the judgment of conviction in connection with such plea is admissible in a civil action, for it is then in the nature of an admission of the facts."  Fidelity-Phenix Fire Ins. Co., 146 So. at 392.

9

Mr. Hill's fraudulent intent is further evinced by his admission that he did the same thing to many other victims to whom he is paying restitution through the criminal action.

The above result would be the same under either the "reasonable" reliance or the "justifiable" reliance standards mentioned above. Subsumed in Mr. Hill's guilty plea is his admission that both Mr. Merchant and Mr. Cosby justifiably relied on his false promise (otherwise there could have been no crime or conviction) and no evidence was admitted at trial which suggests that a reasonable person standing in either's shoes would have had any reason to doubt or suspect that he did not mean to honor that promise. Absent patent falsity, or prior knowledge of the falsity of a representation, or circumstances surrounding the pronouncement of same that would have aroused suspicion as to its validity in the mind of a reasonable person, a plaintiff has no duty to affirmatively investigate and determine for himself whether or not the defendant is telling the truth. Ex parte Leo, 480 So.2d 572, 576 (Ala. 1985); Shahan v. Brown, 167 Ala. 534, 52 So. 737 (1910). Mr. Hill does not contend otherwise.

Consequently, Mr. Merchant and Mr. Cosby have proved causes of actions for intentional fraud under Alabama law.[6] Furthermore, the conclusion is unavoidable that the debts Mr. Hill owes to them were incurred by him as a result of his fraudulent actions and are, therefore, nondischargeable by virtue of section 523(a)(2)(A).

Mr. Hill's only defense was to testify that he intended to remit the money given to him by Mr. Merchant and Mr. Cosby to cover the balances owed on their cruises to Carnival when he received that money. But he did not say specifically why he did not implement that intention except to emphasis that he was weathering financial difficulties at the time, as if those difficulties justified his using his clients' money to keep his business afloat rather than for the purpose for which the money was delivered to him. To the contrary, rather than excusing or justifying his malfeasance, the fact that he was in financial extremis at the time he took Mr. money from Mr. Merchant and Mr. Cosby, supports the inference that Mr. Hill was more inclined at the time to use that money to

---

[6] The fact that Mr. Hill violated a criminal statute does not, in itself, entitle the plaintiffs to a civil judgment for damages. The conduct which formed the basis of the conviction must also have satisfied the elements of a civil cause of action already recognized under Alabama law:

> Even though an act may constitute a crime, if it also results in injury to the person or property of another, the act may still be the basis of a civil action for damages. However, civil liability will ensue only if the acts complained of violate the legal rights of the plaintiff, constitute a breach of duty owed to the plaintiff, or constitute some cause of action for which relief may be granted.

Martinson v. Cagle, 454 So.2d 1383, 1385 (Ala. 1984). Hence, a complaint which alleges only that the defendant committed criminal acts and that the plaintiff was thereby injured does not state a cause of action for which relief may be granted.

Case 12-00043-TOM    Doc 27    Filed 09/16/13    Entered 09/16/13 14:11:25    Desc Main
Document    Page 10 of 23

alleviate his financial pressures than he was to send it to Carnival. And the fact that he did not send the money to Carnival indicates clearly that he did not intend to do so, despite his assertion to the contrary, especially given the fact that the deadline for forwarding the money to Carnival was nigh when he received it from them.

### f. Conclusions as to Mr. Hill's
### Liability and Nondischargeability

The evidence establishes that Mr. Hill is liable to Mr. Merchant and Mr. Cosby and any debt caused by that liability is not dischargeable in this case.[7]

More importantly, Mr. Hill's alleged honest intentions are contrasted by his guilty plea in the criminal case, which constitutes an admission in this case that he intended to deprive Mr. Merchant and Mr. Cosby of their money rather than to use it in the manner that he had promised them he would. And finally, the fact that he did the same thing, in the same manner, during the same general time frame, to so many other people furthermore cements the conclusion beyond reasonable possibility that Mr. Hill never intended to forward the money given to him by Mr. Merchant and Mr. Cosby to pay the balances due on their respective cruises to Carnival. See Jones v. Childers, 18 F.3d 899, 913 (11th Cir. 1994); Phillips v. Smalley Maintenance Services, Inc., 711 F.2d 1524, 1532 (11th Cir. 1983).

### 2. Mrs. Emily Hill's Liability and Nondischargeability

Mrs. Emily Hill, Mr. Hill's wife, is a co-debtor in the instant case from which this adversary proceeding emanates. She is also a named defendant in the plaintiffs' complaint, and her name appears in the style of the complaint, as a defendant. She is also included in the introductory paragraph of the complaint which includes:

Terry Merchant, Brenda Merchant, Kevin Cosby and Vickie Cosby (the "Plaintiff") by and through their attorneys, Roderick Graham, as and for their complaint seeking to deny the dischargeability of specific debts of Emily Hill and Clarence Hill, Jr. (the "Defendant" or "Defendants")

---

[7]Mr. Merchant's wife, Brenda Merchant, and Mr. Cosby's wife, Vickie Cosby, are also named as plaintiffs in the complaint; however, neither appeared at the trial or submitted evidence in support of their claims. Furthermore, no one submitted any evidence that: any representation was made to either of them by Mr. Hill; either of them relied on any representation made by him; either of them paid him any money; either of them even knew Mr. Hill or ever communicated with him in any way; or that he owes them any sort of debt.

Consequently, neither Mrs. Merchant nor Mrs. Cosby proved that she is entitled to any form of relief in this case. Therefore, the complaint, to the extent it seeks relief for those plaintiffs, must be denied.

Case 12-00043-TOM   Doc 27   Filed 09/16/13   Entered 09/16/13 14:11:25   Desc Main
Document      Page 11 of 23

pursuant to 11 U.S.C.A. § 523(a)(2), (a)(3), (a)(4) and (a)(6), allege and state as follows....

Complaint at 1, A.P. Docket No. 1.

Mrs. Hill is mentioned only one other time in the complaint, that is in paragraph numbered 9 where she is merely identified as one of the debtors in the associated bankruptcy case: "The Defendant, Emily Hill, Jr., is one of the debtors in the above-captioned chapter 7 case." Id. Otherwise the complaint does not mention Mrs. Hill, much less make any allegation or contention against her or describe any wrongdoing she committed. Similarly, at trial, no evidence was offered to prove that: she made any promises or representations to any of the plaintiffs of any nature; she committed any act against or in relation to the plaintiffs; she otherwise did anything or did not do something, which may have caused any of them harm in any way; or that she owes any of them a debt of any sort.

Consequently, no basis exists for finding that Mrs. Hill owes a debt to any of the plaintiffs herein, much less a debt is not dischargeable. The complaint filed by the plaintiffs herein, to the extent it seeks relief against Mrs. Hill, must, therefore, be denied.

## B. Damages

Because the Court has determined that a debt exists under state law, and that the debtor is liable for that debt under state law, and that the debt is nondischargeable - in the case of an unliquidated debt, the bankruptcy court may liquidate that debt by awarding appropriate damages and entering a nondischargeable civil judgment against the debtor.[8]

---

[8]Because the debtor must owe a debt to a creditor before that debt can be declared nondischargeable, a creditor must establish the existence and amount of the debt under state law:

Making a determination regarding the dischargeability of a debt involves a two-step process: first, the establishment of the debt itself; and second, a determination as to the nature—dischargeable or nondischargeable—of that debt. Banks v. Gill Distrib. Ctrs., Inc. (In re Banks), 263 F.3d 862, 868 (9th Cir.2001). At times the debt at issue has previously been liquidated; other times it has not. In the case of an unliquidated debt, the bankruptcy court must necessarily determine liability and damages in order to establish the underlying debt.

Stanbrough v. Valle (In re Valle), 469 B.R. 35, 43 (Bankr. D. Idaho 2012). See also, Sterling Factors, Inc. v. Whelan, 245 B.R. 698, 708 (N.D. Ga. 2000)("[A]n adversary proceeding respecting dischargeability consists of three elements: liability, damages, and dischargeability."); Trustees of the Operating Engineers Local # 965 Health Benefit Plan v.

12

Because this Court has determined that Mr. Hill owes Mr. Merchant and Mr. Cosby nondischargeable debts for fraud, the Court must now determine what damages, if any, those plaintiffs are entitled to because of the debts.

## 1. Pecuniary Damages

The restitution order in Mr. Hill's criminal action established the amount of pecuniary damages he owes Mr. Merchant and Mr Cosby. Alabama law provides, "If conviction in a criminal trial necessarily decides the issue of a defendant's liability for pecuniary damages for a victim, that issue is conclusively determined as to the defendant, if it is involved in a subsequent civil action." Code of Ala., 1975, § 15-18-75.

Indeed, neither successful plaintiff here contended or offered evidence that he incurred any pecuniary damages other than those provided for in the state court restitution order; therefore, this Court need not address any such issue, except to find that both Mr. Merchant and Mr. Cosby are entitled to the amount of damages specified by the state court.

In contrast, because each seeks damages for mental anguish and punitive damages, both of those are discussed below:

## 2. Mental Anguish Damages

A plaintiff victimized by intentional fraud may recover compensatory damages for mental anguish and emotional distress. Orkin Exterminating Co. v. Jeter, 832 So.2d 25, 38-39 (Ala. 2001); Williams v. Williams, 786 So. 2d 477, 481 (Ala. 2002); Life Ins. Co. of Ga. v. Johnson, 684 So. 2d 685, 690 (Ala. 1996), vacated on other grounds, 519 U.S. 923 (1996), and overruled on other grounds, 701 So. 2d 524 (Ala. 1997); Foster v. Life Ins. Co. of Georgia, 656 So2d 333, 337 (Ala. 1994). "Mental anguish includes anxiety, embarrassment, anger, fear, frustration, disappointment, worry, annoyance, and inconvenience." Horton Homes, Inc. v. Brooks, 832 So. 2d 44, 53 (Ala. 2001). A plaintiff need not have suffered any physical injury or manifested any physical symptoms in order to recover damages for mental anguish. "Under Alabama law, the presence of physical injury or physical symptoms is not a prerequisite for a claim for

---

Westfall (In re Westfall), 379 B.R. 798, 802-803 (Bankr. C.D. Ill. 2007)("This Court must determine the existence of an underlying debt before reaching the dischargeability issues."); Drummond v. Freeland (In re Freeland), 360 B.R. 108, 129 (Bankr. D. Md. 2006)("When a complaint to determine nondischargeability of debt is brought in the bankruptcy court prior to the entry of a judgment in a nonbankruptcy forum, the bankruptcy court has subject matter jurisdiction, not only to determine nondischargeability of the debt, but also to liquidate the amount of the debt and enter a nondischargeable judgment therefor."); Gattalaro v. Pulver (In re Pulver), 327 B.R. 125, 132 (Bankr. W.D.N.Y. 2005)("In an Adversary Proceeding respecting dischargeability, there are three elements to be determined. These elements are liability, damages and dischargeability.").

damages for mental anguish." Kmart Corp. v. Kyles, 723 So. 2d 572, 578 (Ala. 1998). " 'The plaintiff is only required to present some evidence of mental anguish, and once the plaintiff has done so, the question of damages for mental anguish is for the [fact finder].' " Kmart Corp. v. Kyles, 723 So. 2d at 578 (quoting Alabama Power Co. v. Harmon, 483 So. 2d 386, 389 (Ala. 1986)). The plaintiff's testimony constitutes direct evidence of mental anguish. Southern Pine Elec. Co-op. v. Burch, 878 So.2d 1120, 1127 (Ala. 2003). Absent direct evidence, substantial damages for mental anguish may not be awarded. Kmart Corp. v. Kyles, 723 So. 2d at 578. That is, substantial damages may not be inferred simply from circumstances attending the particular breach of duty or contract. Id. "Evidence of the mere occurrence of an event, without evidence indicating mental anguish resulting from that event, does not justify a substantial award of damages for mental anguish." Orkin Exterminating Co. v. Jeter, 832 So. 2d at 38. Moreover, strict scrutiny must be employed when fashioning an award for mental anguish where the plaintiff "... has offered little or no direct evidence concerning the degree of suffering he or she has experienced." Kmart Corp. v. Kyles, 723 So. 2d at 578. "While the virtue of stoically dismissing one's suffering by limiting any description of it to a few terse words has its place, the courtroom is not one of them if the person suffering is a plaintiff who expects a significant award to pass judicial scrutiny." Delchamps, Inc. v. Bryant, 738 So.2d 824, 838 (Ala. 1999).

### a. Mr. Merchant

In the instant case, Mr. Merchant testified that he became angry when he discovered that Mr. Hill had spent the money he gave Mr. Hill rather than Mr. Hill paying it to Carnival for the balance owed on his cruise. He also testified that he has remained angry since. He said that although he and his wife had been on cruises before, they had never been on one like the one they thought they were purchasing from Mr. Hill. Mr. Merchant testified about how much they were looking forward to the trip. When they learned they would not be going on the cruise they had planned and anticipated for months, they were angry and disappointed. He said that they were pressed into going on an alternative trip to Cancun which they did not really want, but they had to do something or waste the week of vacation they had already planned. It was apparent to the Court from Mr. Merchant's testimony that his anger at Mr. Hill for Mr. Hill's felonious actions, Mr. Merchant's concern over the money Mr. Hill had stolen from him, and his disappointment at having to settle for a less desirable alternative non-cruise trip, that the trip the Merchants did take was not as enjoyable as it could have been.

Mr. Merchant explained that he was a "blue collar" worker, and that to him, the $3,246 that Mr. Hill stole from him represented a substantial sum of money. One can reasonably infer that Mr. Merchant would naturally have been upset, angry, and disappointed to have had that money, which he had worked so hard to earn and save, stolen from him. Moreover, one can reasonably infer that Mr. Merchant would naturally have been upset, angry, and disappointed by the other consequence of Mr. Hill's malfeasance, which was to have a dream trip that he had his wife had planned and eagerly anticipated cancelled at the last minute. Those circumstances, along with Mr.

14

Merchant's testimony regarding the mental anguish he suffered as a result of Mr. Hill's actions, provide ample evidence, both direct and indirect, to support an award of compensatory damages to Mr. Merchant for mental anguish in this case.

There is no exact measure for calculating an award of compensatory damages for mental anguish. <u>Delchamps, Inc. v. Bryant</u>, 738 So.2d 824, 838 (Ala. 1999). Nevertheless, Mr. Merchant's mental anguish can be quantified monetarily as a component of the compensatory damages he is entitled to from Mr. Hill.

Direct evidence from Mr. Merchant's testimony was that he suffered significant anger, disappointment, and concern as a result of Mr. Hill's intentional fraud. Indirect evidence proves that there are certain natural reactions to such fraud that the Court may reasonably infer, including reactions to: (1) the loss by Mr. Merchant of a substantial sum of money which he could ill afford to lose; (2) the cancellation of a vacation that he and his wife dearly wanted to experience with their friends; (3) having to settle for a consolation trip that they really did not want; and (4) the natural tendency of such recent deleterious events to weigh on their minds and otherwise prevent them from fully enjoying the unwanted, substitute trip. Based on that evidence, the Court finds that a reasonable and just amount to compensate Mr. Merchant for his mental anguish is $3,000.

### b. Mr. Cosby

Since Mr. Cosby did not appear at the trial, the Court lacks any evidentiary basis for awarding him damages for mental anguish, or, for that matter, any compensatory damages other than the pecuniary damages established by the restitution order in the state court criminal case.

### 3. Punitive Damages

A plaintiff victimized by intentional fraud may also recover punitive damages. Code of Ala., 1975, § 6-11-20(a). One paradox arises in the context of a nondischargeability proceeding in bankruptcy, that is, the burden of proof for declaring a debt nondischargeable is "preponderance of the evidence," <u>Grogan v. Garner</u>, 498 U.S. 279, 287 (1991), while the burden of proof for awarding punitive damages in a fraud case under Alabama law is "clear and convincing evidence." "Punitive damages may not be awarded in any civil action, except civil actions for wrongful death pursuant to Sections 6-5-391 and 6-5-410, other than in a tort action where it is proven by <u>clear and convincing evidence</u> that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff." Code of Ala., 1975, § 6-11-20(a)(emphasis added). "Clear and convincing evidence" is "[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion." Code of Ala., 1975, § 6-11-20(b)(4). The "clear and convincing evidence" standard is, of course, more

15

stringent and demanding than the "preponderance of the evidence" standard. "Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt." Id. So while a determination of nondischargeability, and an award of compensatory damages as well, can be made in this proceeding based on the lesser "preponderance of evidence" standard, punitive damages may not be awarded unless Mr. Hill's intentional fraud has been proved by "clear and convincing evidence." As discussed below, this Court finds that it has.

As discussed above, Mr. Hill admitted at trial that he kept the funds Mr. Merchant and Mr. Cosby gave him rather than sending those funds to the cruise company to pay the balances owed on these gentlemen's trips. The fact that he may have needed the money to keep his floundering business afloat provides no justification for stealing it from the plaintiffs. His conviction in the criminal case constitutes further proof that he intended to deprive the plaintiffs of their money when he received it from them. And his guilty plea in that case constitutes an express admission of his fraudulent intent.

Moreover, the fact that he did the same thing to many other of his customers eviscerates the self-proclaimed facade that he intended, when he received the money from the plaintiffs, to send it to Carnival. Instead it constitutes clear proof that he was engaged in a practice and scheme at the time to steal money from many clients. For his part, Mr. Hill offered no evidence to detract from the clarity of that evidence or to otherwise make it any less convincing. His suggestion that his guilty plea was entered for convenience only is patently incredible since it is apparent from the dearth of exculpatory evidence presented by him in this proceeding that he has no legitimate excuse for his conduct other than he needed to put everybody's money in the same account and use the money in that account to pay business obligations as they came due, rather than earmarking the funds received from a client to pay for the trip booked by that client. That excuse is even unreasonable as of the time he received the money from the plaintiffs for the balances due on their trips in March. Mr. Hill's business was in financial trouble, and he had already inappropriately used a substantial number of other clients' monies, or was in the process of doing so. Mr. Hill then failed to explain where and how he expected to receive enough money in that month, after he had received the money from the plaintiffs, and prior to the deadline the plaintiffs' balances were due to Carnival, from other clients or sources to cover those balances.

Indeed, it is fraudulent by definition for one to promise that he will use money received from another for a particular purpose when his real intention is to use it for a different purpose, even if he hopes to receive sufficient funds from an unrelated source to satisfy his original promise, a fortiori if that hope is unfounded or unrealistic. In short, the evidence in this case that Mr. Hill intentionally defrauded the plaintiffs is abundantly clear and thoroughly convincing.

16

### a. Factors to Consider

In reviewing a jury's award of punitive damages, Alabama trial and appellate courts must apply the factors enunciated in BMW of North America, Inc. v. Gore, 517 U.S. 559, 574 (1996) and Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala. 1989). Ross v. Rosen-Rager, 67 So.3d 29, 41 (Ala. 2010). When awarding punitive damages in a non-jury trial, a trial court must apply the same factors. Oliver v. Towns, 738 So.2d 798, 803 (Ala.1999).

The Gore factors include: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408, 418 (2003)(paraphrasing the factors).

The Green Oil factors are:

(1)    Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the actual or likely harm is slight, the damages should be relatively small. If grievous, the damages should be much greater.

(2)    The degree of reprehensibility of the defendant's conduct should be considered. The duration of this conduct, the degree of the defendant's awareness of any hazard which his conduct has caused or is likely to cause, and any concealment or 'cover-up' of that hazard, and the existence and frequency of similar past conduct should all be relevant in determining this degree of reprehensibility.

(3)    If the wrongful conduct was profitable to the defendant, the punitive damages should remove the profit and should be in excess of the profit, so that the defendant recognizes a loss.

(4)    The financial position of the defendant would be relevant.

(5)    All the costs of litigation should be included, so as to encourage plaintiffs to bring wrongdoers to trial.

(6)    If criminal sanctions have been imposed on the defendant for his conduct, this should be taken into account in mitigation of the punitive damages award.

17

(7)    If there have been other civil actions against the same defendant, based on the same conduct, this should be taken into account in mitigation of the punitive damages award.

539 So.2d at 223-224 (quoting Aetna Life Insurance Co. v. Lavoie, 505 So.2d 1050, 1062 (Ala. 1987).

Because the first two Gore factors are identical to the first two Green Oil factors, thus leaving one unique Gore factor to be considered in addition to those required by Green Oil, synchronization of the two cases leaves an amalgamation of 8 factors which must be considered by a trial court sitting as fact finder in any given case in which the imposition of punitive damages is authorized. Those are:

(1)    the reprehensibility of the defendant's conduct;

(2)    the relationship of the punitive-damages award to the harm that actually occurred, or is likely to occur, from the defendant's conduct;

(3)    the defendant's profit from his misconduct;

(4)    the defendant's financial position;

(5)    the cost to the plaintiff of the litigation;

(6)    whether the defendant has been subject to criminal sanctions for similar conduct;

(7)    other civil actions the defendant has been involved in arising out of similar conduct; and

(8)    the civil penalties authorized or imposed in comparable cases.

### b.  Application of the Factors

### (1) The reprehensibility of the defendant's conduct

While the law does not allow the imposition of punitive damages for non-reprehensible conduct, the governing cases countenance degrees of reprehensibility, and base awards on those degrees.  "That conduct is sufficiently reprehensible to give rise to tort liability, and even a modest award of exemplary damages does not establish the high degree of culpability that warrants a substantial punitive damages award." BMW of North America, Inc. v. Gore, 517 U.S. at 580.

By definition, it is reprehensible to intentionally defraud someone out of their hard-earned cash.  Moreover, any act of malfeasance for which the law permits an

18

award of punitive damages must, in itself, be odious. Consequently, Mr. Hill's intentional fraud was reprehensible. It is, however, in degree, on the moderate end of the scale.

Mr. Hill was no doubt aware, or should have been acutely aware, that his conduct would damage the plaintiffs by depriving them of the funds that they paid him and jeopardizing their chance to go on their vacation trips, and, moreover, cause them much consternation regarding both of those effects. He either explicitly or tacitly lied to Mr. Merchant in March, when the later contacted him to discuss itinerary changes, by discussing those changes as if the trip had been booked, and would proceed as promised, and not disclosing at that time that Mr. Merchant's money had been spent on other pursuits and the trip either had been or necessarily would be cancelled. He no doubt made the same nondisclosures with respect to Mr. Cosby, and his funds, and the trip he had planned. Moreover, Mr. Hill, by his own admission, engaged in similar misconduct with respect to many other people during the same time frame. All of that authorizes an award of punitive damages, but as to degree, Mr. Hill's actions are at the moderate end of the reprehensibility spectrum. He did not physically harm either plaintiff, or attempt to do so, or place either in a position of danger, or scare them, or intimidate them, or menace them, or curse at them, or physically impede either's freedom of movement, or besmirch either's reputation.

### (2) The relationship of the punitive-damages award to the harm that actually occurred, or is likely to occur, from the defendant's conduct

Mr. Hill's conduct lasted only a brief period of time in relation to each plaintiff. The harm he caused the plaintiffs was a one-time thing, and they will suffer no additional harm as a result of that misconduct. Since Mr. Hill is no longer in the travel agent business, no harm is likely to come to any other prospective travelers from similar misconduct in the future. Consequently, an award of punitive damages will not serve as a deterrent to future, similar misconduct on Mr. Hill's part.

The plaintiffs suffered pecuniary damages in the amount of $3,246.00 each. Mr. Merchant, according to his testimony, furthermore suffered a moderate amount of mental anguish. While the harm caused by Mr. Hill's misconduct to the plaintiffs cannot be considered "slight," it cannot by any stretch be "grievous" either. Moreover, the compensatory damages, as discussed above, to be awarded in this case to Mr. Merchant for emotional distress contain an element of punishment, and while no such award is being made to Mr. Cosby, that possibility was available to him had he attended the trial of this matter and produced evidence of such emotional distress. As explained below:

> The compensatory damages for the [emotional distress] injury suffered here, moreover, likely were based on a component which was duplicated in the punitive award. Much of the distress was caused by the outrage and humiliation the [plaintiffs] suffered at the actions of their insurer; and it

19

is a major role of punitive damages to condemn such conduct. Compensatory damages [for emotional distress], however, already contain this punitive element. See <u>Restatement (Second) of Torts § 908</u>, Comment c, p. 466 (1977)("In many cases in which compensatory damages include an amount for emotional distress, such as humiliation or indignation aroused by the defendant's act, there is no clear line of demarcation between punishment and compensation and a verdict for a specified amount frequently includes elements of both").

<u>State Farm Mutual Automobile Insurance Co. v. Campbell</u>, 538 U.S. at 426.

### (3) The defendant's profit from his misconduct

Mr. Hill's wrongful conduct was profitable to him only in the amount of the money that he received from the plaintiffs and misappropriated. Compensatory damages will be awarded in the amount stolen from each victim to erase that profit and an award of punitive damages of any amount will cause him to recognize a loss. More than a <u>de minimis</u> award of punitive damages would be unnecessary to realize that result.

### (4) The defendant's financial position

Mr. Hill's financial position is, according to his testimony, very modest. He is 67 years old, retired, and lives on social security payments. He is no longer in business. In addition, he has been justifiably saddled with $127,000 in nondischargeable restitution, of which $106,285 remains unpaid. "If criminal sanctions have been imposed on the defendant for his conduct, this should be taken into account in mitigation of the punitive damages award." <u>Green Oil Co. v. Hornsby</u>, 539 So.2d at 224. It is hardly conceivable that Mr. Hill will, absent a windfall, be able to pay that amount, much less pay punitive damages to the plaintiffs. "[O]nly in the rarest of cases should [a punitive damages award] be large enough to destroy; this is not its purpose." <u>Id</u>. at 222 (quoting <u>Ridout's-Brown Service, Inc. v. Holloway</u>, 397 So.2d 125, 127-28 (Ala. 1981)(Jones concurring). "As we have stated so many times, the punitive verdict should be enough to punish the defendant and vindicate the public's right to be free of the kind of conduct of which the jury has found the defendant guilty, but the amount should not be so much as would financially destroy him." <u>Fuller v. Preferred Risk Life Ins. Co.</u>, 577 So.2d 878, 885 (Ala. 1991). Those factors - Mr. Hill's financial situation and the criminal sanctions already imposed on him for his conduct - mitigate strongly against an award of punitive damages in this case and, <u>a fortiori</u>, against more than a minimal award of such damages.

### (5) The cost to the plaintiff of the litigation

"[T]he purpose of punitive damages is not to compensate the plaintiff but to punish the wrongdoer and to deter the wrongdoer and others from committing similar wrongs in the future ...." <u>Green Oil Co. v. Hornsby</u>, 539 So.2d at 222. It is difficult to

reconcile that axiom with the <u>Green Oil</u> guidepost which requires the trial judge, when formulating an award of punitive damages, to consider all of the plaintiff's costs of litigation so as to encourage plaintiffs in general to bring wrongdoers to trial. In any event, while the plaintiffs in this case have no doubt incurred trial expenses, neither offered any evidence of any such expenses at trial. Consequently, the consideration of that particular guidepost is impossible in the present case.

### (6) Whether the defendant has been subject to criminal sanctions for similar conduct

In <u>Gore</u>, the Court said, "Comparing the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct provides a third indicium of excessiveness." 517 U.S. at 583. In a subsequent case, <u>State Farm</u>, the Court retreated from that part of its previous statement which referred to potential criminal penalties and wrote:

> When used to determine the dollar amount of the award, however, the criminal penalty has less utility. Great care must be taken to avoid use of the civil process to assess criminal penalties that can be imposed only after the heightened protections of a criminal trial have been observed, including, of course, its higher standards of proof. Punitive damages are not a substitute for the criminal process, and the remote possibility of a criminal sanction does not automatically sustain a punitive damages award.

538 U.S. at 428.

### (7) Other civil actions the defendant has been involved in arising out of similar conduct; and

No evidence was produced which suggests that other civil actions have been filed against Mr. Hill based on the same conduct involved in this case. That guidepost cannot, therefore, be taken into account in mitigation of any punitive damages which may be awarded against him in this case.

### (8) The civil penalties authorized or imposed in comparable cases

The Court in <u>State Farm</u> considered the civil penalties awardable under state law for the particular misconduct involved in that case. In this case, the plaintiffs have not pointed out any Alabama statutes which provide for the imposition of civil penalties for misconduct of the nature committed by Mr. Hill. Consequently, consideration of this particular <u>Green Oil/Gore</u> guidepost for the purpose of formulating a punitive damages award is not possible.

### c. Conclusions from the Factors

After considering the <u>Green Oil/Gore</u> guideposts, which the evidence in this case permits the Court to do, the Court concludes an award of $2,500 in punitive damages to each plaintiff is appropriate. While Mr. Hill's conduct was egregious enough to authorize the imposition of punitive damages to punish him for that conduct, it was, on a scale of possible egregiousness, at the lower end. In addition, since he is out of the travel business, and will not, therefore, have the opportunity again to engage in that sort of misconduct, any award of punitive damages will not serve to deter him from future misconduct of like kind. Also, given the mountain of restitution that he has left to pay, and his apparent inability to pay that, much less an award of punitive damages in this case, as well as his advanced age and modest income, it is apparent that Mr. Hill has received punishment enough to last a lifetime. Therefore, a larger award of punitive damages in this case will not serve to punish him anymore than he has already been punished. Any larger award of punitive damages in this case "would be far out of proportion to its intended purpose." <u>Green Oil Co. v. Hornsby</u>, 539 So.2d at 223.

Moreover, any larger, "sanction imposed in this case cannot be justified on the ground that it [is] necessary to deter future misconduct..." since that goal has already been achieved," as a result of both the state court restitution order and the fact that Mr. Hill is no longer in the travel business. <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. at 584. Moreover, "the State's legitimate objectives" in punishing "reprehensible conduct" will be "satisfied" without the necessity of imposing any larger amount of punitive damages in this case. <u>State Farm Mut. Auto. Ins. Co. v. Campbell</u>, 538 U.S. at 420-421. And finally, with respect to Mr. Merchant, any additional award of punitive damages will merely serve to duplicate somewhat the punishment element which is inherent in compensatory damages to be awarded in this case to him for mental anguish. <u>Id</u>. at 426.

### V. Conclusion

Based on the above, the Court concludes:

(1) Mr. Merchant is entitled to judgment against Mr. Hill in the amount of $8,746, which includes $3,246 in pecuniary damages, $3,000 in damages for mental anguish and emotional distress, and $2,500 in punitive damages; that said judgment is a debt for actual fraud; and that it is nondischargeable by virtue of 11 U.S.C. § 523(a)(2)(A);

(2) Mr. Cosby is entitled to judgment against Mr. Hill in the amount of $5,746, which includes $3,246 in pecuniary damages and $2,500 in punitive damages; that said judgment is a debt for actual fraud; and that it is nondischargeable by virtue of 11 U.S.C. § 523(a)(2)(A);

Case 12-00043-TOM   Doc 27   Filed 09/16/13   Entered 09/16/13 14:11:25   Desc Main
Document      Page 22 of 23

(3)    With respect to the pecuniary damages awarded to said plaintiffs, they must credit Mr. Hill for any restitution they receive from the state criminal court and must credit the restitution they are due to receive from that court for any amounts they may collect on the judgment entered in this case against Mr. Hill. Code of Ala., 1975, § 15-18-75; <u>Fore v. State</u>, 858 So.2d 982 (Ala. Crim. App. 2003);

(4)    The relief requested, if any, in this case by the plaintiffs Brenda Merchant and Vickie Cosby must be DENIED because they have wholly failed to prove that they are entitled to any relief; and

(5)    The relief requested, if any, in this case by the plaintiffs against Mrs. Emily Hill must be denied because they have wholly failed to prove that they are entitled to any relief against her.

A separate order will be entered in conformity with this memorandum opinion.

Dated: September 16, 2013        /s/Benjamin Cohen
                                        BENJAMIN COHEN
BC:sm                            United States Bankruptcy Judge

Case 12-00043-TOM    Doc 27    Filed 09/16/13    Entered 09/16/13 14:11:25    Desc Main
Document    Page 23 of 23